UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| KIMBERLY MYLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-632 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g), seeking review of

a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to

disability insurance benefits (DIB). On January 21, 2004, plaintiff filed her application for benefits,

claiming a May 1, 1998 onset of disability. (A.R. 55-57). She later amended her claim to allege a

January 1, 2003 onset of disability. Plaintiff's disability insured status expired on December 31,

2003. (A.R. 60). Thus, it was plaintiff's burden to submit evidence demonstrating that she was

disabled on or before December 31, 2003. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir.

1990). Plaintiff's claim was denied on initial review. (A.R. 27-32). On March 14, 2006, she

received a hearing before an administrative law judge (ALJ) at which she was represented by

counsel. (A.R. 444-73). On May 1, 2006, the ALJ issued a decision finding that plaintiff was not

disabled. (A.R. 19-26). On May 7, 2008, the Appeals Council denied review (A.R. 4-6), and the

ALJ's decision became the Commissioner's final decision.

On July 2, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits.  The issues raised by plaintiff are as follows:

I.    The Commissioner's finding that there is other work in the national economy that Ms. Myland can do is not supported by substantial evidence.

    A.    The ALJ's RFC finding is not based on substantial evidence.

    B.    The ALJ failed to follow the "slight abnormality" standard in finding that the claimant's depression is non-severe.

    C.    There was no substantial evidence of ability to do other work.

II.   The Commissioner failed to properly apply the Sixth Circuit pain standard and made credibility findings which were not based on a full and accurate reading of the record.

    A.    The ALJ failed to properly apply the pain standard.

    B.    While the ALJ cited SSR 96-7p, she failed to follow its requirements.

    C.    The ALJ's credibility findings are fundamentally flawed.

III.  The ALJ failed to properly evaluate the medical evidence.

    A.    The ALJ erred in not conducting a longitudinal evaluation of the claimant's multiple sclerosis.

    B.    The ALJ failed to give adequate weight to the opinion of the claimant's treating physician.

IV.   The ALJ erred in failing to find that the claimant's multiple sclerosis meets and/or equals the criteria of Listing 11.09.

V.    The additional evidence submitted to the Appeals Council is new, material, and there was good cause for not presenting it in the prior proceeding.

(Plf. Brief at 9-25, docket # 8). Upon review, I recommend that plaintiff's request for a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied, and that an order to that effect be entered. I further recommend that a judgment be entered affirming the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v.*

-3-

*Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of January 1, 2003, through December 31, 2003, but not thereafter. (A.R. 21). Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 21). The ALJ found that plaintiff had the severe impairment of multiple sclerosis (MS). (A.R. 21). She found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ found that through her date last disability insured, plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk at least 6 hours in an 8-hour workday, with a sit/stand option at will; sit at least 6 hours in an 8-hour[] workday, with a sit/stand option at will; avoid walking on uneven terrain; never climb ladders, ropes or scaffolding; occasionally climb stairs and ramps, balance, stoop, crouch, kneel and crawl and avoid concentrated exposure to work hazards such as heights and moving machinery.

(A.R. 22). She found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 22-26). The ALJ found that plaintiff was not capable of performing her past relevant work. (A.R. 24). Plaintiff was thirty-eight years old as of her date last insured. Thus, she was classified as younger individual at all times relevant to her claim. Plaintiff has a high school education and is able to communicate in English. (A.R. 24). The transferability of job skills was not at issue because her past relevant work was unskilled. (A.R. 25). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 9,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 471-72). The ALJ held that this constituted a significant number of jobs. Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 19-26).

## 1.

Plaintiff persistently invites the court to commit error by considering evidence that was not before the ALJ in determining whether the ALJ's decision is supported by substantial evidence. (Plf. Brief at 11, 15, 16, 21; Reply Brief at 5, docket # 14). For more than fifteen years it has been the clearly established law of the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence

presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The court is not authorized to consider additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).

Plaintiff asks the court to remand this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence. (Plf. Brief at 23-25; Reply Brief at 7). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence plaintiff now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are

not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The October 4, 2006 statement from Michelle Crooks, M.D. (A.R. 394-97) and the December 26, 2006 statement from Phillip Green, M.D. (A.R. 398-401) are new because they are "second" statements taken by plaintiff's attorney intended as a response to the ALJ's May 1, 2006 decision. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357. None of the medical literature attached to Dr. Green's second statement (A.R. 402-40) is new because every article was written before the ALJ entered her May 1, 2006 decision.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver*, 804 F.2d at 966; *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good cause); *Cranfield v. Commissioner*, 79 F. App'x 852, 859 (6th Cir. 2003). Plaintiff argues that "good cause" is present because the second statements from Doctors Crooks and Green were necessary to correct "misinterpretations of the evidence" by the ALJ, and that the "new evidence serves to support the Claimant's credibility and to educate the decision maker on the nature of Multiple Sclerosis." (Plf. Brief at 24-25). I do not find good cause. The time to present evidence supporting the plaintiff's credibility was before, not after the ALJ made her decision. Nothing in the ALJ's opinion suggests that she was unfamiliar with MS. Plaintiff's argument that the new evidence is necessary to address purported "misinterpretations" by the ALJ is, at its core, an improper attempt to use

evidence that was never before the ALJ in support of an argument that the ALJ's decision is not supported by substantial evidence. I find that plaintiff has not carried her burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). The ALJ found that Dr. Green was not a treating physician because he did not start treating plaintiff until July 2005, almost eighteen months after plaintiff's disability insured status expired. (A.R. 22, 24, 378). *See Kornecky v. Commissioner*, 167 F. App'x 496, 507-08 (6th Cir. 2006). The second statement obtained from Dr. Green (A.R. 398-401) would not have reasonably persuaded the Commissioner to reach a different conclusion. Dr. Green was not a treating physician during the period at issue, and his opinions regarding plaintiff's level of fatigue during a period long before he ever saw her as patient would not be considered persuasive.

I further find that the second statement from Dr. Crooks would not have reasonably persuaded the Commissioner to reach a different conclusion regarding whether plaintiff was disabled on or before December 31, 2003. The record shows that shortly before plaintiff's disability insured status expired, Dr. Crooks diagnosed plaintiff's MS and conducted a counseling session with plaintiff and her husband regarding that diagnosis. Dr. Crooks first examined plaintiff on June 3, 2003, on a referral from Dr. Cecilia Prophit, M.D., to evaluate plaintiff for the possibility of multiple sclerosis after a May 16, 2003 MRI revealed white matter lesions which were "very suspicious for a demyelinating process such as multiple sclerosis." (A.R. 185; *see* 24, 381). The purpose of Dr.

Crooks's evaluation was to confirm a diagnosis of MS rather than being an attempt to determine what plaintiff's functional capabilities were. (A.R. 381-82). Plaintiff's primary complaint was intermittent dizziness. (A.R. 215). She denied experiencing any episodes of focal weakness. (A.R. 24, 215, 381). She denied any bowel or bladder symptoms. She had no visual complaints and had never experienced double vision. (A.R. 215). She "denied any symptoms of subfluent apasia." (A.R. 215). Upon examination, Dr. Crooks found that plaintiff was not in any acute distress. Plaintiff's attention and concentration were intact and her long and short term memory did not appear to be impaired. (A.R. 216). Plaintiff maintained good strength in her upper extremities. In her lower extremities she was "4+/5 in the iliopsoas on the right, 5/5 in the left iliopsoas, and 5/5 in the remainder of the lower extremities." (A.R. 216). Plaintiff's deep tendon reflexes were brisk throughout. Her gait was "normal based and steady." She was able to walk on her heels and toes without significant difficulty. Her tandem gait was "mildly" unsteady. (A.R. 216). Dr. Crooks scheduled plaintiff for a June 16, 2003 lumbar puncture procedure and stated that she would have plaintiff return around July 1, 2003, to discuss the test results. (A.R. 216).

On June 26, 2003, Dr. Crooks met with plaintiff and her husband in a counseling session lasting approximately 40 minutes. Dr. Crooks explained that her diagnosis was "probable MS," and that plaintiff had "a long-standing course that ha[d] been fairly benign. However, this did not necessarily imply that the remainder of her course [would] also be benign" (A.R. 213). Dr. Crooks recommended that plaintiff start on immunomodulating medication. (A.R. 213). Dr. Crooks indicated that she would see plaintiff back in six months. (A.R. 213). Plaintiff's disability insured status expired on December 31, 2005.

On January 16, 2006, Dr. Crooks conducted another meeting with plaintiff and her husband. Plaintiff related that since she had started taking the medication Rebif, she had developed symptoms different from those she had described to Dr. Crooks in the initial consultation. Plaintiff reported that she had experienced constant heat in her feet and pain in her upper extremities and she also described a sensation as if her skin "jump[ed]" all the time. (A.R. 211). She stated that these initial side effects from taking Rebif had been severe, but by January 2004 they were "much more mild." (A.R. 211). Plaintiff reported that her energy level and her ability to stay awake had improved since she started taking Rebif. (A.R. 211). Dr. Crooks wrote:

> I spent approximately 30 minutes counseling Kimberly and her husband today. I again explained that Rebif is a medication not designed to improve her status but to try to stabilize her course. Thereby, I would not expect her to feel better than when she initiated the medication. It is not uncommon for MS symptoms to fluctuate over time and therefore, the alteration in her symptomatology is not that surprising. She has not had anything I would characterize as an exacerbation. Additionally, she has only been on the medication for approximately six months. Therefore, it is certainly too early for us to decide that this medication is not effective for her.

(A.R. 211).

On March 13, 2006, the day before plaintiff's administrative hearing, her attorney took his first statement from Dr. Crooks. Dr. Crooks related that she had not had any in-depth discussion with plaintiff regarding her symptomatology for more than a year. Plaintiff was involved in a research study. Dr. Crooks was a "blinded examiner," which meant that to the extent possible, her treatment of plaintiff was limited to "an objective examination of [plaintiff] without any discussion of her symptomatology." (A.R. 381). Dr. Crooks stated that it was her impression that plaintiff tended to under-report her symptomatology, but confirmed that there was nothing in her records supporting plaintiff's claim that she needed to take extended naps during the day:

Q:      Did you form any impression as to Kimberly's reliability as a historian reporting her symptoms and conditions to you?

A:      My impression with Kimberly is that she tends to under-report her symptomatology. She tends to downplay it.

Q:      She gives a history, and indicates that at the hearing tomorrow in her case, she is going to testify that she has suffered from severe fatigue and that at least since 1/1/03 that fatigue has been so severe that she would not be able to engage in even sedentary activity, eight hours a day, five days a week on a sustained basis without taking a long nap in the middle of the day. Now in reviewing your notes, I don't see any history of that sort. I gather that if it's not in your history she didn't give you that history.

A:      I have no independent recollection of her giving me that history, and I certainly did not document it in may notes.

(A.R. 382).

On May 1, 2006, the ALJ entered her decision finding that plaintiff was not disabled on or before December 31, 2003. The ALJ gave little or no weight to Dr. Crooks's "impression" that plaintiff tended to "under-report" or "downplay" her symptomatology:

The undersigned [] gave little or no weight to the March 13, 2006, statement from Dr. M. Crooks, who did treat the claimant in 2003 (Exhibit 14F) [A.R. 382]. Dr. Crooks indicates that the claimant "downplays" her symptoms, yet the claimant's hearing testimony regarding onset and inability to function back to the alleged onset date suggests otherwise. Even though Dr. Crooks suggests the claimant's self-reported debilitating symptoms could have existed before the December 31, 2003 (date last insured), Dr. Crooks also admits some MS patients have more symptoms than others and some are able to function "relatively well."

(A.R. 24). The ALJ noted Dr. Crooks's records stating that plaintiff's course of MS had been "fairly benign" and that she had not experienced anything Dr. Crooks would characterize as an "exacerbation." (A.R. 23-24).

On October 4, 2006, plaintiff's attorney elicited a second statement from Dr. Crooks seeking the doctor's views on some of the "observations the Administrative Law Judge made in this

case." (A.R. 394).  He invited Dr. Crooks to elaborate on  what she had meant on June 26, 2003

when she stated that plaintiff's course of MS had been "fairly benign":

> Q       This is Wednesday, October 4, 2006, I'm talking to Michelle Crooks, M.D.  Dr.
> Crooks, I want to ask you essentially some follow up questions to the statement that
> you gave to me earlier in 2006 and also in that regard ask you about some
> observations that the Administrative Law Judge made in this case.  She made the
> observation that in your note of 6/26/03 you made a comment that Kim has had a
> longstanding course that has been fairly benign, that's in your notes, but I wonder if
> you would care to elaborate on what you meant by that comment?
>
> A       Well, I think that comment was made in the context of all the degrees of MS that [I]
> see as a physician.  MS patients vary from very limited in their disability to extremely
> disabled and unable to provide for themselves at all.  At that time, Kim was having
> a benign course in the sense that she was still able to walk, she had not lost vision in
> one eye or both eyes, she still had reasonable control of bowel and bladder function.
> That statement was made in the context of the full spectrum that we see in MS and
> at that time, in the scope of MS, she still, at least, was ambulatory, her cognition was
> fairly normal.  It's a wide range of disease that we see[,] so in the scope of what we
> see[,] certainly she was not in a nursing home, she was not needing someone to
> provide for her activities of daily living, that's the context in which that statement
> should have been taken.

(A.R. 394).  He asked for further input regarding what Dr. Crooks had meant when she stated that

plaintiff had not experienced anything she would classify as an exacerbation:

> Q       The ALJ also noted that in your 1/16/04 note that you made the observation "she has
> not had anything that I would classify as an exacerbation."  Again, can you provide
> some perspective on that comment?
>
> A       If you read that whole paragraph of that letter, that statement was made in the context
> of discussing her initiation to a medication called Rebif.  And, that day Kim and her
> husband and I did some counseling in regard to what her expectations should be for
> this medication.  That statement was basically saying that since she had started that
> medication she has had nothing that I would call an exacerbation and that statement
> was basically being put there to say this is why we're continuing the medication.  Not
> to say that she had never had an exacerbation and certainly, I cant's make that
> statement at all given that I did not start seeing her until 2003 and she was already
> symptomatic prior to that date.

(A.R. 394). Dr. Crooks related that MS patients can have problems with fatigue and that daily symptoms can fluctuate. (A.R. 395). She stated that, "Patients can have fairly reasonable strength, ability to walk, cognition and have disabling fatigue." (A.R. 396). Plaintiff's counsel invited Dr. Crooks to express her opinion regarding the ALJ's administrative fact finding regarding plaintiff's RFC:

> Q: The Judge in this case has concluded that Kim is capable of doing a light RFC, which essentially means that the judge thinks she could be on her feet six of eight hours, lift 10 pounds frequently, which is defined as from one-third to two-thirds of an eight-hour day and lift 20 pounds occasionally, which is defined as up to one-third of an eight hour day. I understand you haven't assessed her functional capabilities at any time, but I'm wondering, given everything you know about her case, whether you think that she was capable of doing that kind of light work on 12/31/03.

> A: Well I can't necessarily speak directly to Kim's situation, but certainly patients like Kim with MS, with her degree of fatigue at that point of time would not be able to sustain 6 out of 8 hours on their feet. They require very frequent rest periods and it doesn't seem realistic to think that Kim would have been able to function 6 hours on her feet, given the degree of fatigue that she was experiencing at that time, or that she testified to having experienced at that time.

(A.R. 396-97).

I find that the second statement from Dr. Crooks is not "material." The ALJ understood the context in which Dr. Crook's had stated that plaintiff's MS had been "fairly benign." If anything, her elaboration on the absence of an "exacerbation" simply reinforces the fact that Dr. Crooks can say very little about plaintiff's condition before she began treating plaintiff on June 3, 2003. Dr. Crooks's meticulous documentation of the side effects plaintiff experienced with the medication Rebif makes it unlikely that any significant symptoms before the expiration of insured status remained unrecorded. Her comments regarding the ALJ's RFC determination would not have persuaded the ALJ to reach a different decision. Her comments were not entitled to any particular

weight, and were based on giving full credibility to testimony the ALJ found was not fully credible. *See Warner v. Commissioner*, 375 F.3d 387, 390-91 (6th Cir. 2004). Dr. Crooks did not make any objective assessment of plaintiff's functional capabilities.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's request for a sentence six remand be denied. Plaintiff's arguments will be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ failed to give adequate weight to the opinion of her treating physicians, Doctors Green and Crooks. (Plf. Brief at 18-22; Reply Brief at 5). Upon review, I find that this argument does not provide a basis for disturbing the Commissioner's decision.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner and a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d at 390; *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390.

It is the ALJ's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, No. 08-6244, 2009 WL 1531879,

at * 3 (6th Cir. June 2, 2009); *Martin v. Commissioner*, 170 F. App'x 369, 373 (6th Cir. 2006).

Judicial review of the Commissioner's final administrative decision does not encompass resolving

such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Walters v. Commissioner*, 127

F.3d at 528; *see Price v. Commissioner*, No. 08-4210, 2009 WL 2514079, at * 2 (6th Cir. Aug. 19,

2009). The treatment relationship is one of the factors that the ALJ considers in determining what

weight to give a medical opinion. Generally, more weight is given to the medical opinions of

treating sources. 20 C.F.R. § 404.1527(d)(2). If the ALJ finds that the treating source's opinion on

the issues of the nature and severity of the claimant's impairments is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the case, the social security regulations specify that the ALJ is to give the

medical opinion controlling weight. *Id.*; *see McGrew v. Commissioner*, No. 08-4561, 2009 WL

2514081, at * 3 (6th Cir. Aug. 19, 2009); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009);

*White v. Commissioner*, 572 F.3d 272, 285-86 (6th Cir. 2009). A treating physician's opinion is not

entitled to controlling weight where it is not "well-supported by medically acceptable clinical and

laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008)

("This court generally defers to an ALJ's decision to give more weight to the opinion of one

physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected

opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by

conclusory statements of doctors, particularly where they are unsupported by detailed objective

criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336,

340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not

entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 2009 WL 1531879, at * 5-6; *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876.

Dr. Green did not begin treating plaintiff until July 2005, eighteen months after plaintiff's disability insured status had expired. (A.R. 22, 24, 378). The ALJ correctly determined that Dr. Green was not a treating physician for the purposes of this claim for DIB benefits. *See Kornecky v. Commissioner*, 167 F. App'x 496, 507-08 (6th Cir. 2006). Because Dr. Green was not

a treating physician, the special rules regarding a treating physician's opinions are inapposite. Plaintiff's related argument that the ALJ "improperly rejected Dr. Green's opinion that the Claimant met [] listing section 11.09" (Plf. Brief at 22-23) is patently meritless. Dr. Green's opinion that plaintiff met the requirements of a listed impairment was not a medical opinion and it was not entitled to any weight. *See Warner*, 375 F.3d at 390; *see also Zaph v. Commissioner*, No. 97-3496, 1998 WL 252764, at * (6th Cir. May 11, 1998) ("[T]he issue of whether an individual's impairment is the equivalent of a listed impairment is an administrative finding, not a medical one.").

The ALJ addressed Dr. Crooks's opinions under the treating physician rule. (A.R. 224). Plaintiff objects to the paragraph in the ALJ's opinion, previously quoted herein, where the ALJ gave little or no weight to Dr. Crook's March 16, 2006 statement to plaintiff's attorney that she believed that plaintiff tended to "under-report her symptomatology." (Plf. Brief at 20). This was not a medical opinion entitled to any particular weight. It was the ALJ's job, not the treating physician's, to make the credibility determination regarding plaintiff's testimony concerning her subjective functional limitations on and before the expiration of plaintiff's disability insured status. *See Allen v. Commissioner*, 561 F.3d at 652. Plaintiff objects to the ALJ's observation that Dr. Crooks's statement that some MS patients have more symptoms than others undercut her suggestion that plaintiff might have had unreported debilitating symptoms before her disability insured status expired. (Plf. Brief at 20). It was appropriate for the ALJ to observe that the medical record does not contain contemporaneous statements by plaintiff to her physicians describing debilitating symptoms during her disability insured period. It was an indicator that plaintiff's MS symptoms had not yet reached the level she described in her March 14, 2006 testimony.

In summary, I find no violation of the treating physician rule and that the ALJ complied with the procedural requirement of providing good reasons for the weight she gave to Dr. Crooks's opinions.

### 3.

Plaintiff argues that the ALJ "erred in not conducting a longitudinal evaluation of plaintiff's multiple sclerosis." (Plf. Brief at 17). The Sixth Circuit has long recognized that MS is a progressive disease for which there is no cure and which is subject to periods of remission and exacerbation. *Wilcox v. Sullivan*, 917 F.2d 272, 278 (6th Cir. 1990); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981). However, MS is not *per se* disabling under the social security regulations. *See Jones v. Secretary of Health and Human Services*, No. 93-1958, 1994 WL 468033, at * 3 (6th Cir. 1994) (collecting cases). The Sixth Circuit has consistently held that, "[W]hen a claimant with multiple sclerosis applies for social security benefits, it is error to focus on periods of remission from the disease to determine whether the claimant has the ability to engage in substantial gainful employment." *Id*. In *Anderson v. Commissioner*, 44 F. Supp. 2d 696, 699 (E.D. Mich. 2006) the district court stated that the lesson of *Parish* and *Wilcox* "is that multiple sclerosis is a disease that requires a longitudinal evaluation" and that the ALJ erred because "the period focused upon by the ALJ was a period of remission." Upon review, I find no evidence that the ALJ focused on a period of remission or that her focus was so narrow that it presented a distorted picture of plaintiff's level of functioning on and before the date her date last disability insured. I find no error.

**4.**

Plaintiff disagrees with the ALJ's credibility determination regarding her subjective complaints: (A) the ALJ "failed to properly apply the pain standard" (Plf. Brief at 14-15); (B) "While the ALJ cited SSR 96-7p, she failed to follow its requirements" (Plf. Brief at 15-17); and (C) that the "ALJ's credibility findings are fundamentally flawed (*Id.* at 17). I find that the ALJ's credibility determination is supported by more than substantial evidence, and that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision.

The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, h[er] conclusions with respect to credibility should not be discarded lightly

and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

A.   Evaluation of Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ "failed to properly apply" the Sixth Circuit "pain standard." (Plf. Brief at 14).  Her argument is quoted below:

> In Ms. Myland's case, of course, we are not concerned with pain symptoms, but rather symptoms of fatigue, muscle weakness, muscle spasm, etc.  The Sixth Circuit pain standard is nonetheless applicable.  The ALJ found that the Claimant's multiple sclerosis could have been reasonably expected to produce the severe symptoms described by Ms. Myland, but went on to conclude that Claimant's statements concerning the intensity, duration, and limiting effects of these symptoms [were] not entirely credible. (Tr. 22).  This analysis is correct on the first prong, but errs on the second, as Ms. Myland's objectively manifested multiple sclerosis unquestionably could reasonably be expected to produce the disabling symptoms  described by Ms. Myland.  Support for this position is found in the records of Dr. Crooks, Dr. Green, Dr. McCormick and the four statements given by Drs. Crooks and Green.  (Tr. 211-217, 296-330, 378-383, 394-401).[1]

(Plf. Brief at 14-15).

The ALJ assessed the credibility of plaintiff's subjective complaints in the manner specified in 20 C.F.R. § 404.1529, SSR 96-7p, and other social security regulations and rulings. (A.R. 22-24).  Plaintiff cites *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) as the Sixth Circuit's "pain standard."  (Plf. Brief at 14).  *Felisky* in turn cites *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).  In *Felisky*, the Sixth Circuit described its *Duncan* standard as a "more succinct form" of 20 C.F.R. § 404.1529, the regulation outlining the process for evaluating subjective symptoms of pain and fatigue. 35 F.3d at 1038-39. Section 404.1529(a) states,

---

[1]The court cannot consider the second statements by doctors Green and Crooks (A.R. 394-401) in this context because they were not part of the record before the ALJ when she issued her decision.

"statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a). "Your symptoms, such as pain, fatigue, shortness of breath, weakness or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present." 20 C.F.R. § 404.1529(b). Evidence considered in the process of evaluating the intensity and persistence of symptoms, and the extent to which symptoms limit a claimant's capacity to work, is addressed in 20 C.F.R. § 404.1529(c)(3). This type of evidence consists of all the available evidence, including medical history, medical signs and laboratory findings, statements provided by the claimant, treating or examining physicians or psychologists, or other persons about the claimant's pain and other symptoms (*e.g.*, what may precipitate or aggravate symptoms, what medications, treatments or methods are used to alleviate symptoms, and how symptoms affect the claimant's activities of daily living). 20 C.F.R. § 404.1529(c).

In its post-*Felisky* decisions, the Sixth Circuit has held that *Felisky* did not create a requirement that an ALJ must conduct an item-by-item discussion of every factor set forth in the regulation. *See Bowman v. Chater*, No. 96-3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997). While the Sixth Circuit's *Felisky* decision applied each of the factors of 20 C.F.R. § 404.1529(c)(3), *Felisky* "did not mandate that the ALJ undergo such an extensive analysis in every decision. Rather,

[it] held that where the medical record does not contain objective evidence to support pain allegations, such allegations may not be dismissed without review of non-medical factors." *Id.*; *accord McCoy ex rel. McCoy*, 81 F.3d 44, 47 (6th Cir. 1995).

The ALJ's opinion set forth the factors identified by 20 C.F.R. § 404.1529 and SSR 96-7p and properly applied them. The ALJ's lengthy credibility determination is incorporated herein by reference. (A.R. 22-24). The ALJ stated, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected top produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (A.R. 22). The ALJ was not persuaded by plaintiff's testimony asserting that she suffered from disabling symptoms on and before her date last disability insured. (A.R. 22-23). She was not persuaded that plaintiff's doctors had ignored plaintiff's symptoms, and she found that plaintiff's daily activities during the period at issue undercut her claims of severe functional limitations:

> According to the claimant, she had the following limitations before her date last insured (and they have gotten worse in the past two or so years). The claimant said she could walk 1/2 hour (unassisted), stand 10-15 minutes, and sit 1/2 hour. She could lift one gallon but not much more. Although the claimant claimed difficulty maintaining her balance, the claimant admitted she was not using an assistive device in 2003. She asserted that she had difficulty stooping, crouching, crawling, kneeling, and bending and dropped things when using her hands. The claimant asserted she had to take naps 2-4 times a day (in between "projects" such as household chores) and slept up to 6 hours during the daytime. The claimant could take care of personal hygiene. She could cook using frozen food (otherwise her husband cooked and still does), go [] grocery shopping alone (pushing her cart), some laundry, make her bed and dust. Other family members did dishes, vacuum[ed] and [took] out the garbage. The claimant [] plant[ed] lots of flowers in the past. In 2003, she might have had a small garden, which she occasionally tended (but for no longer than 20 minutes and while sitting).
>
> The claimant testified she tried crocheting, but this did not work because of her hands. She admitted driving on errands and still drives daily to get her child from school (about 10 minutes away). The claimant said it has been mentally and physically difficult for her to socialize with family and friends. However, she later admitted she went to NYC with some

family members in 2002. The claimant described "almost falling" on an escalator because of poor balance and someone having to carry her stuff for her. According to the claimant, it was at this time her sister encouraged the claimant to seek medical assistance since another sister was previously diagnosed with MS. This somewhat contradicts the claimant's contention that she has had disabling MS since May 1, 1998, but doctors ignored her symptoms. Why would the doctors the claimant saw before May 2003 ignore her symptoms if she had a family history of MS?

The claimant also admitted to attending church weekly (for about one hour), going to school events and driving a child to and from piano lessons. She uses her computer every week to look at e-mail and the [I]nternet and watches television daily ("it's on"). The claimant admitted she can follow the news. She still handles her family finances but her husband now checks over her work. The claimant described her typical day (at the time of her date last insured) as getting up between 6-6:30 a.m. to get her child[] ready for school, eating breakfast, and then returning to bed. She got up again between 10-11 a.m., showered, rested, made lunch, and did some household chores between 12-3:00 p.m., when she drove to school to pick up her child. She returned home and napped again until dinner and then went back to sleep. According to the claimant, she did have some problems sleeping at night in 2003, but now takes medication which helps.

The objective medical evidence and the 96-7p factors do not fully support the claimant's subjective complaints back to the date last insured, although the evidence supports many of the claimant's self-imposed limitations now. The medical record shows the claimant getting worse over the last two years (2004 and 2005). However, back at the date last insured this was not the case. As seen in Exhibit 5F [A.R. 213], the claimant's MS was classified as "fairly benign" even though she was started on medication in June 2003. Treatment notes from January 2004, show the claimant had not yet had an exacerbation. [A.R. 211]. Those arose in 2004 (after her insured status expired).

(A.R. 23-24). It was entirely appropriate for the ALJ to take plaintiff's daily activities into account in making her credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Upon review, I find that the ALJ's application of 20 C.F.R. § 404.1529 was entirely consistent with the Sixth Circuit's *Felisky* decision and that the ALJ's credibility determination is supported by more than substantial evidence.

B.     SSR 96-7p

Plaintiff argues, "While the ALJ asserts that the SSR 96-7p factors[2] do not fully support the Claimant's subjective complaints back to the date last insured, her support for this assertion is without foundation." (Plf. Brief at 16).  This argument is largely based on the second statements from Doctors Crooks and Green, which for the reasons previously, cannot be considered in the process of determining whether the ALJ's credibility determination is supported by substantial evidence.

Plaintiff argues that the ALJ "failed to note Dr. Crooks's findings that Ms. Myland suffered from muscle spasms of the upper extremities (and prescribed Baclofen for the spasms) and Dr. McCormick's findings that the claimant suffered from dysphagia (swallowing difficulties).  Both of these findings predated the date last insured. (Tr. 211-217, 282-288)." (Plf. Brief at 16).  Plaintiff did not testify regarding any functional limitations attributable to muscle spasms or dysphagia.  Dr. Crooks's January 16, 2004 notes state that plaintiff described over the telephone what sounded like spasms in her proximal upper extremities.  Dr. Crooks prescribed Baclofen in response to these complaints and it "helped significantly with this problem." (A.R. 211).  Dr. McCormick's records (A.R. 282-88) are from March of 2004, after plaintiff's disability insured status had expired.  On March 29, 2004, plaintiff reported that her dysphagia had been present for about a year and that it occurred about twice a month.  She stated that she never had trouble swallowing foods.  She reported that her experience with dysphagia was limited to "watery liquids." (A.R. 283).  Plaintiff provides

_____

[2]SSR 96-7p sets forth a non-exhaustive list of multiple factors for the ALJ to consider in addressing the claimant's credibility.  *See White v. Commissioner*, 572 F.3d at 287; *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-2p (reprinted at 1996 WL 374186 (SSA July 2, 1996)).

no argument explaining how plaintiff's difficulty swallowing liquids approximately twice a month would constitute a significant work-related functional limitation. Nothing in this section of plaintiff's brief provides a basis for disturbing the Commissioner's decision.

C.     <u>Fundamentally Flawed Credibility Determination</u>

This heading appears on page seventeen of plaintiff's brief. No new arguments are presented under it. The arguments summarized in this section of plaintiff's brief are rejected for the reasons previously stated herein.

**5.**

Plaintiff presents a series of arguments under the heading "The Commissioner's Finding That There [was] Other Work in the National Economy that Ms. Myland [could] Do is Not Based on Substantial Evidence": (A) the ALJ's RFC finding "is not based on substantial evidence," (Plf. Brief at 9-11); (B) the ALJ "failed to follow the 'slight abnormality' standard in finding that the claimant's depression [was] non-severe," (*Id.* at 11-13); and (C) "[t]here was no substantial evidence of ability to do other work," (*Id.* at 13-14). I find that these arguments do not provide a basis for disturbing the Commissioner's decision.

A.     <u>RFC Determination</u>

Plaintiff argues that the Commissioner's decision finding that as of her date last disability insured plaintiff retained the RFC for a limited range of light work is not supported by substantial evidence. (Plf. Brief at 9-11). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffith v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is a determination made by the ALJ based upon all the evidence within the record.

*Walters*, 127 F.3d 525, 531 (6th Cir. 1997). Plaintiff lists a series of symptoms and argues that the ALJ should have found that plaintiff was limited to sedentary work with limited use of her upper extremities. (Plf. Brief at 9-11). The ALJ found that plaintiff's subjective complaints were not fully credible. Her credibility determination and RFC determination are supported by more than substantial evidence.

B.     Non-severe Impairment of Depression

Plaintiff argues that the ALJ failed to follow the "slight abnormality standard in finding that plaintiff's depression was non-severe." (Plf. Brief at 11-13). At Step 2 of the sequential analysis that ALJ found that plaintiff had the severe impairment of MS. (A.R. 21). She found that plaintiff's depression and anxiety were not severe. They had resulted in no restriction of activities of daily living, no restrictions of social functioning, mild restriction of concentration, persistence and pace, and no episodes of decompensation. (A.R. 21). To the extent that plaintiff is arguing that the ALJ's decision should be overturned because the ALJ failed to find an additional severe impairment at Step 2, her argument is patently meritless. The Step 2 finding of a severe impairment is a threshold issue. If the ALJ finds at least one severe impairment, the sequential analysis continues to the next step. The failure to find additional severe impairments is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2008); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Plaintiff "admitted that she [was] not on any anti-depressant medication" and the ALJ observed that "her general physician prescribe[d] her anxiety medicine." (A.R. 22 ). Plaintiff argues that, "the ALJ fails to even acknowledge a consultative psychological examination completed

4/11/04 (slightly more than three months after claimant's date last insured), which finds that the claimant suffers from an adjustment disorder with mixed anxiety and depressed mood with a GAF of 60." (Plf. Brief a 12; *see* Reply Brief at 4). "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); 2004); *accord Van Der Maas v. Commissioner*, 198 F. App'x 521, 526 (6th Cir. 2006). The record shows that on April 11, 2004, four months after she filed her application for DIB benefits, plaintiff appeared for a consultative psychological evaluation conducted by Limited License Psychologist Anne G. Kantor, M.A. (A.R. 289-94). Ms. Kantor did not perform any objective tests but did record plaintiff's statements. Ms. Kantor offered a diagnosis of an adjustment disorder with mixed anxiety and depressed mood. (A.R. 294). She did not purport to opine on plaintiff's condition at any time during plaintiff's disability insured period. Ms. Kantor gave plaintiff an April 11, 2004 GAF score of 60. This GAF score was not entitled to any weight. The ALJ is not required to give any weight to a GAF score. *Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment:

> [GAF score is] a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms ... or any serious impairment in social, occupational, or school functioning

(e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Commissioner*, 572 F.3d at 276. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n. 7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning."[3] *Kornecky*, 167 F. App'x at 511. I find no error.

Plaintiff argues that the ALJ's opinion failed to discuss the consultative evaluation conducted on December 5 and 6, 2005 by Psychologist Alan C. Lewandowski, Ph.D., and his conclusions that plaintiff suffered from "marked depression and co-morbid anxiety," cognitive deficits consistent with MS, and that plaintiff was not capable of full-time, fully compensated employment. (Plf. Brief at 12; Reply Brief at 5). The ALJ was not required to discuss this evidence and her failure to do so does not indicate that it was not considered. *Daniels v. Commissioner*, 152 F. App'x at 489 (6th Cir. 2005). The absence of a discussion of the results of this December 2005 consultative evaluation does not provide a basis for overturning the Commissioner's decision. Psychologist Lewandowski did not purport to evaluate plaintiff's condition at any time during

---

[3]Even assuming *arguendo* that the GAF score of 60 was entitled to some weight, the ALJ's RFC determination was consistent with "moderate" symptoms. A GAF score in the range of 51-60 "indicates moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Bowen v. Commissioner*, 478 F.3d 742, 745 (6th Cir. 2007).

plaintiff's disability insured period.  He evaluated plaintiff's condition as of December 2005, two years after plaintiff was last disability insured.  His December 2005 conclusion that plaintiff "is not at this time capable of full-time, fully compensated employment" (A.R. 333), would not have been entitled to any particular weight, even assuming that it had related to the disability insured period at issue.

C.      Ability to Do Other Work

Plaintiff argues that the VE's response to the ALJ's hypothetical question did not provide substantial evidence supporting the ALJ's decision because it did not include limitations related to:  balance, use of upper extremities, standing for less than six out of eight hours, "mental limitations resulting from Claimant's depression and anxiety," limits on any repetitive activity.  (Plf. Brief at 13-14; Reply Brief at 6).  Plaintiff's argument with regard to her subjective complaints is a mere repackaging of her challenge to the ALJ's credibility determination, and it is rejected for the reasons previously stated herein.  It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints.  *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008).  The ALJ found that plaintiff's subjective complaints were not fully credible.  The ALJ was not bound in any way by a VE's response to a hypothetical question incorporating a contrary assumption.

**Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's request for a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied, and that an order to that effect

be entered.  I further recommend that a separate judgment be entered affirming the Commissioner's decision.

Dated:   September 11, 2009          /s/  Joseph G. Scoville
                                     United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).